IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE DISTRICT OF DELAWARE

JOHN ROBERTSON, )
    PLAINTIFF, )
   )
V. ) CIV. NO.  06-19-KAJ
   )
CORRECTIONAL MEDICAL SYSTEMS )
("CMS"), )
    DEFENDANT. )

FILED APR 2 8 2006 U.S. DISTRICT COURT DISTRICT OF DELAWARE

## AMENDMENT TO COMPLAINT

**NOW COMES THE PLAINTIFF,** John Robertson, pro se, who moves this Court with his <u>Amendment to Complaint,</u> pursuant to the applicable Federal Rule governing the same. In order to articulate his cause of action, the plaintiff offers the following:

1. The plaintiff's need for treatment was obvious on December 14, 2005 when he appeared to the Correctional Medical Systems ("CMS")[1] medical department in Howard R. Young Correctional Institution (hereinafter "H.R.Y.C.I.") complaining about the accident that occurred.[2] There was a huge lump on the top of the plaintiff's head, which was the result of the contact between the metal beam and his head.

2. While under CMS's initial care, the plaintiff complained of lightheadedness and being mentally inert. After a cursory examination, and **no** treatment for his complaints, the plaintiff was summarily denied effective medical service. Even amidst possible serious head trauma, CMS did not even order remedial testing of the plaintiff. Instead, they released him back to general prison population.

3. The plaintiff asserts that the State is obligated to provide adequate medical care for him while he's incarcerated. After seeing a CMS Doctor on December 20, 2005, and being

---

[1] Plaintiff is uncertain as to the full trade name of the defendant, but understands that the common trade name is "CMS." As such, he will refer to the defendant as "CMS."

give a prescription for Ibuprofen, the plaintiff was informed that he would receive a "follow-up" within 15 days in order to "reevaluate" his condition.

4.  After 15 days had elapsed, the plaintiff still did not get called back to CMS for the "follow-up," which was designed to allow for a "reevaluation" of his case. As a result, the plaintiff submitted Sick-Call Slips on January 6, 2006 and January 8, 2006.

5.  The plaintiff was called to CMS on January 9, 2006, at which point he saw the Doctor. Again, the Doctor neglected to perform any relevant tests, or administration of treatment commensurate to the plaintiff's initial complaints.

6.  Plaintiff pleads that he has to rely whole-heartedly on the prison authorities at H.R.Y.C.I. to address his medical needs. If those authorities – of which CMS is the prime candidate – fails to address his medical needs, the plaintiff is in eminent danger.

7.  Acts of omissions sufficiently harmful to serious medical needs constitute deliberate indifference. On January 9, 2006, the plaintiff saw the CMS Doctor again; but the visit was promptly cut short because his chart couldn't be located. Before leaving CMS, the plaintiff advised the Doctor that his condition had worsened. Not only was he experiencing continual migraine headaches, but he was also suffering from an increased neck and shoulder inflammation. The end result of all of the aforesaid, was a chronic pain, numbness and tingling sensation in the plaintiff's arms and hands. Yet and still, the Doctor advised the plaintiff that his condition was the result of him being "overweight," and not the elevator accident.

8.  The Doctor's *remedy* to the repeated complaints of the plaintiff was to prescribe him Chlorpheniramine (a cold and allergy medicine), along with a diet portion of State meals. The plaintiff showed no symptoms of a common cold; and the diet meal was never received until

---

[2] Refer to original complaint for details of the accident.

April 4, 2006, which was several months after his Doctor's visit. Additionally, nothing was given to the plaintiff for the obvious pain that he was in.

9.  On January 14, 2006, the plaintiff was informed by Lt. Petrick (8 a.m. to 4 p.m. shift at H.R.Y.C.I.), in an intimidating manner, that the events of December 14, 2005, were not reported by either Officer Hitchins or Officer Soul.[3] The metal support beam that fell upon the plaintiff's head was given to Officer Hitchins. The two aforementioned Officers made decisions as prison authorities to **not** report the matter in question, i.e. the accident. Furthermore, the plaintiff informed Lt. Petrick of his medical condition, which was responded to by the Lieutenants assertion that he was only there to give the plaintiff the opportunity to "informally resolve" a medical grievance that he'd filed, or not.

10. On December 18, 2005, Lt. Petrick also stated that if the plaintiff was in need of treatment to submit another Sick Call Slip.

11. The unnecessary pain and suffering incurred by the plaintiff as a direct result of CMS's malpractice and deliberate indifference constitutes a violation of the contemporary standards of decency.

12. There were more Sick Call Slips submitted by the plaintiff on January 21, 2006; and he was eventually escorted back to CMS. At that particular visit, the plaintiff sat from 9 a.m. to 2 p.m. before being informed by the Corrections Officer that he would be rescheduled.

13. The medical staff of CMS followed a course of routinely prescribing nothing more than painkillers when a *thorough* diagnosis would have disclosed an obvious need for remedial treatment.

---

[3] These Officers were present at the time of the actual accident, yet did not follow protocol and report the incident to their Superior Officers.

14. On January 23, 2006, the plaintiff was saw by a Doctor. The Doctor prescribed more Ibuprofen and Ranitidine (acid reflux and ulcer medication).

15. After becoming aware that the medication was not working at all, the plaintiff submitted a few more Sick Call Slips. On February 16, 2006, he was escorted to CMS. Unfortunately, the Doctor wasn't due in to the facility that day, which nullified the visit.

16. On February 18, 2006, a different CMS Doctor saw the plaintiff. This particular physician stated that the plaintiff's pain, migraine headaches, and numbness in his limbs were due to "muscle spasms." He prescribed 500 mg Robaxin and 600 mg Ibuprofen.

17. After a few days, the plaintiff had to submit another Sick Call Slip because the meds were not working.

18. In the worst cases, such failures (as above) to treat injuries may actually produce physical torture or a lingering death. In less serious cases, denial of medical care may result in pain and suffering, which serves no penological purpose.

19. Plaintiff wasn't seen by CMS again until March 8, 2006. At that point, the Doctor refused to change or renew the prescription.

20. The plaintiff had a few Ibuprofen left over, until the morning Security Team took the last of it on March 12, 2006. Deliberate indifference is shown when prison guards intentionally interfere with prescribed treatment; and when access to medical care is intentionally denied or delayed.

21. Still suffering, the plaintiff submitted more requests for medical treatment. On March 30, 2006, yet another different CMS Doctor saw the plaintiff. That particular Doctor prescribed 1000 mg Robaxin and 800 mg Ibuprofen – an increase in the previous dosages, which were already proven **not** to work.

22. On April 3, 2006, the plaintiff was seen again by the same Doctor. He informed the Doctor that he'd yet to receive the aforesaid medications, even though they were proven ineffective in the past. Ultimately, the plaintiff was still in need of *something* to aid his deteriorating health.

23. Still in pain, the plaintiff submitted another request, and was seen by the regular staff doctor on April 7, 2006. The Doctor stated that she would not change the prescription – even though it was ineffective – and that no other medication was available.

24. The plaintiff also saw the normal CMS Staff Doctor and 2 other Doctors on various dates since December 14, 2005. A total of eight times to be exact. Not to mention, the many requests submitted by the plaintiff pleading for proper treatment, along with the medical grievances, were all ignored.

25. Prison officials and medical authorities had knowledge of the plaintiff's need for medical treatment and care. It was, and remains, very evident. Medical officials of CMS refused to conduct tests that would determine the origin of the plaintiff's problems. Again, he was not given any sort of x-ray or other *thorough* examination until April 11, 2006 – almost 5 months after the fact. The plaintiff's medical needs need not be considered life threatening in order to be considered of a serious nature. As such, CMS's refusal to *properly* treat the plaintiff constitutes a manifest and malicious deliberate indifference under the Eighth Amendment.

26. In closing, the plaintiff asserts that CMS is liable for malpractice through misdiagnosis, mistreatment, and deliberate indifference; and should be liable for damages incurred (both punitive and compensatory).

                    Respectfully Submitted,

                    */s/ John Roberston*
                    **JOHN ROBERSTON**
                    **PRO SE'**
                    **HOWARD R. YOUNG**
                    **P.O. BOX 9561**
                    **WILMINGTON, DE 19809**

Dated:_____

## PROOF OF SERVICE

I, **JOHN ROBERTSON**, do hereby certify that I've caused a true and correct copy of the foregoing **AMENDMENT TO COMPLAINT** to be sent to the following party by placing the same in the U.S. Mail on this  26  Day of  April            , 2006 AD

_____

_____

_____

_____

*John Robertson*
SIGNED

J. Robertson
SBI #541362
P.O. Box 9561
Wilmington, DE 19809


U.S.M. X-RAY

Office of the Clerk
United States District Court
844 N. King Street, Lockbox 18
Wilmington, DE 19801



